Next case on our docket is 23-60495 ExxonMobil v. NLRB. Good morning, Your Honors. May it please the Court, Daniel Shudroff for ExxonMobil Research and Engineering Corporation. Your Honors, the company's petition for review should be granted and the National Labor Relations Board's cross-application for enforcement should be denied. In this case, Your Honors, the National Labor Relations Board abused its discretion by improperly appealing to itself a unanimous September 28, 2020, decision and order dismissing all of the allegations against the company. Section 10D of the Act, the National Labor Relations Act, that is, did not privilege the Board to vacate that particular decision and order. There was no error for the Board to correct given the unanimity of the initial decision. The Board also abused its discretion by disregarding 28 U.S.C. Section 455 to determine whether vacator was appropriate. The Board has looked to that statutory provision in the past for guidance but did not do so in this case. That statutory provision framework contains a harmless error standard which should have been used here, particularly because the September 28, 2020, decision and order was unanimous. Your Honors, even if the Board was privileged to vacate the September 28, 2020, decision and order, it waited an unreasonable length of time to do so. The Board waited more than four months after learning of member Emanuel's purported financial conflict of interest to issue a notice to show cause concerning vacator and did not then vacate the decision for another seven months. And then it took nearly three years between September 28, 2020, and August 25, 2023, before the Board released its new decision, which is the one that is subject to the company's petition for review. The Board's maneuvers put the company in limbo as it was then in collective bargaining negotiations with the charging party in that case, the Independent Laboratory Employees Union, and it did not know whether or not that case that had prevailed on entirely, the September 28, 2020, decision, whether or not that would still stay in effect or not. And it did not know if it could rely on that decision. So it put the company in limbo there. Your Honors, on the merits, the Board's August 25, 2023, decision and order was also not supported by substantial evidence. With respect to the Board's finding that ExxonMobil unlawfully refused to bargain over personal time, the record demonstrates that the parties negotiated over personal time ad nauseam. The fact that the company did not want to vest its supervisors with discretion to approve or deny personal time was not retaliatory. Rather, the company wished to avoid repeated litigation. It was the lessons learned from those earlier cases that it did not want to have repeated. Also, Your Honors, with respect to the Board's finding that the ExxonMobil violated the act concerning statements at the bargaining table concerning paid parental time off, that finding is likewise not supported by substantial evidence. No reasonable listener could have interpreted Mr. Giglio's comment as a bribe, that if employees decertified the union, they would somehow receive the paid parental time off benefit. The company was merely exercising its right under the act to convey that a non-represented employee received that benefit. Your Honors, going back to the, I guess, the initial point on the petition for you, did Your Honors have any questions on the actual vacator issue? Okay. Your Honors, unless Your Honors have any further questions, respectfully request a remainder for rebuttal, and thank you. Good morning. May it please the Court. Eric Weitz on behalf of the National Labor Relations Board. Starting with the procedural vacature issue, I just want to stress what's not before the Court and what's before the Court. So, before the Board, it was undisputed and all parties and Board members agreed that Member Emanuel should have been disqualified from the original decision and should not have participated. The only question that the Board decided here, and that's before the Court, is one of remedy. That is, faced with the fact that Member Emanuel had improperly participated, what was the correct remedy to address that improper participation? And the Board here, entirely reasonably and in line with Supreme Court and Court of Appeals precedent and related context, decided that the best course of action was to simply re-adjudicate the case de novo, to vacate the original decision, to assign the case to a new panel, which then ultimately happened. No one disputes that that new panel was validly composed of presidentially appointed Senate-confirmed Board members, that there was no possibility of a conflict with the original decision, and that that panel, you know, issued a valid order. So, there's no prejudice to ExxonMobil in this case. They obviously disagree with the outcome and preferred the original outcome, but there's no evidence of any kind of substantive prejudice to ExxonMobil. In fact, the new panel largely agreed with the previous panel and dismissed many of the unfair labor practices where the new panel reached a different outcome based on their reading of the evidence. Those are not groundbreaking violations of the Act. It's relatively minor. It requires, it resulted in an order requiring ExxonMobil to cease and desist from those unfair labor practices and to post a remedial notice. So, at the end of the day, the Board acted entirely appropriately for all the reasons outlined in the Board's decision and in our brief in deciding that the safest, best course of action for the integrity of the agency to avoid any possibility of prejudice or bias and to avoid difficult factual inquiries into the actual deliberations in the original case was to simply re-adjudicate the case. That was clearly not an abuse of discretion under the applicable standard of review, and unless the Court has any further questions, I'll move on to the actual substance of the violations. So, the Board found three discreet unfair labor practices regarding two narrow issues that occurred during bargaining. The Board did not find and reverse the judge in finding that the overall course of bargaining was unlawful. So, they found that, in general, bargaining was lawful and undertaken in good faith, but at certain points, ExxonMobil crossed a line into unlawful territory. So, the first two violations, which is a violation of Section 8A.5 of the NLRA and Section 8A.1 and are closely intertwined, involve the issue of, that came up in bargaining, of restoring supervisory discretion to grant personal time off. And this is an area where the standard of review is very important. There's a substantial evidence standard of review, so the question before the Court is not, you know, how the Court would have decided it, or if no reasonable fact finder could reach a contrary conclusion. It's merely whether the conclusion that the Board reached was supported by sufficient evidence in the record. And I would submit that, as the Board outlines in its decision and in our brief, there's more than sufficient evidence to support the Board's conclusion that the position ExxonMobil was taking was not based on legitimate business justifications, but was based on an unlawful, retaliatory motive based on the union's, quote-unquote, aggressiveness and its past history, which is protected, of filing grievances and unfair labor practice charges. So, I'd point... You're talking about their position regarding PTO. Correct. The question of whether to restore supervisory discretion to grant PTO. And so, ExxonMobil's position is that the reason they refused to do that was they wanted to avoid inconsistencies in the way it was applied, which is the position they took at times at the bargaining table and have renewed in our brief. And it's true that at times they used this vague, or made this vague reference to inconsistencies. But as the Board emphasized, at certain points they let slip what that actually meant. So, for example, at record time... I'm not sure I understand their position regarding PTO, so that's why I'm asking. Did they determine that someone else would make the decision and not the supervisors about the grant of PTO? Did they determine that no one gets PTO? I'm not sure what their determination is regarding PTO, other than we want to take it out of the hands of the supervisors, because that's a process that's subject to abuse and inconsistencies. Yeah, so, originally, back in 2016-2017, there was an informal policy that on a supervisory level, so a lower level basis, supervisors could discretionarily grant personal time off. That was eliminated at a certain point prior to these contract negotiations. There was a dispute at the time of the elimination, and then a year or two later, when the parties were now negotiating a new collective bargaining agreement, the union wanted to write into the contract that the old supervisory discretion would be restored. And that was what ExxonMobil refused to consider. Okay, so when they said, when they eliminated supervisory discretion about PTO, what did they replace that with? That's what I'm asking. I'm just asking... I see. How did they say we're going to determine who gets PTO if it's not going to be the supervisors? I actually, I don't know if the record indicates, you know, if the actual amount of, if there was a set amount of personal time which changed or didn't change. The issue was, before, employees could go to a direct supervisor and on a more informal basis could be granted time off. I don't know, to Your Honor's question, if when that was eliminated, there was still a mechanism to go to a higher authority or not. But either way, it was a significant benefit that the union had an interest in restoring, and that ExxonMobil basically refused, said, was adamant in bargaining that they did not want to restore. And so their stated justification, also to Your Honor's question, was that there were these inconsistencies. But as we note in our brief, it's never been clear what those were other than these incidents or this one incident where the union had filed a grievance because an employee was denied personal time off allegedly in a retaliatory way. If the statements hadn't been made to the effect that, well, the employee has a choice. If they want personal time off granted by a supervisor, they can go non-union. If that statement had never been made, what, is there any other evidence that would have supported the board's finding? Well, so that statement, Your Honor, goes to the second violation, which was parental leave. So there's, the case is confusing because there's two forms of leave at issue. So as to the second violation, there was an express statement that if employees wanted this, these eight weeks of paid parental time off, parental leave. I got confused. Right. So what, so what evidence was there backing up? What evidence was there that this was not a good business decision? Just because they got, you know, I can understand if you've been sued over something about the union, you don't want to do that again. Well, so the purported basis is not, it's just a general concern about inconsistency. That's what they're saying the basis was. But the strongest evidence, to answer Your Honor's question, I point the court directly to Record on Appeal 2144. That's where Mr. Geo stated that when the employer was referring to inconsistencies, what they actually meant was that the union was aggressive and got angry in the past in these previous incidents. So it's directly referencing the protected grievance and unfair labor practice charge filing. At Record on Appeal 333, a similar statement was made that specifically tied this alleged inconsistency to the union's protected unfair labor practice charge filing. At Record on Appeal 2365 to 2367, there were statements that the real problem was that the union had not gone through the, quote, proper channels. Again, referencing this previous incident. And as a result, ExxonMobil said that the gravy train, quote unquote, was leaving the station. So all of these statements, direct statements from ExxonMobil at the bargaining table support the board's finding that at the end of the day, there's sufficient evidence that ExxonMobil's real motive and what was conveyed to employees, which is a separate but related violation, was retaliation for protected unfair labor practice charge filing. And it's established under the law that that's not a valid basis for taking a position at bargaining to say we are taking this because we are upset that you exercised your right of filing charges with NLRB. And so that's really the bottom line to this violation. And the question is simply whether those statements are sufficient evidence. And under the substantial evidence standard review, I would submit that that's an entirely reasonable factual finding and an inference made by the board. So turning to the second violation with the paid parental time off, this is a similar situation where there is an express statement at the bargaining table where Mr. Geo stated, not just in a momentary loss of composure, but actual multiple times across a day of bargaining, that if employees wanted this paid parental time off, which prior to bargaining had been granted to unrepresented employees and withheld from represented employees, that if employees wanted that, they should decertify the union. And this was not a statement just made out of the blue or in a vacuum. As the board emphasized, this statement followed a protracted multiple bargaining sessions where the union had repeatedly tried to secure that and tried to determine what concessions it could make, economic concessions, at the bargaining table because this was an important benefit that they wanted to get. They even agreed at a certain point to forego a $5,000 signing bonus to try to get this benefit. And ExxonMobil responded with incredulity that the union would take that position. So there's a factual backdrop in which these statements were made, where the employees at the bargaining table would have already been well aware that ExxonMobil was resisting engaging in fruitful discussions and identifying what concessions were possible. And at the end of that course of bargaining, these statements were made that basically suggested to employees that they would be better off, as to this issue, abandoning their union representation. And that, the board found, crossed the line into an unlawful statement. And again, these are not, there's no finding that the overall course of bargaining was in bad faith. The order in this case is limited to a cease and desist order and a notice posting. And really the limited question before the court is, for these relatively minor violations, did the board fairly read the evidence in the record under the substantial evidence standard of review? And if there are no further questions, then the board would simply ask that the court enforce the board's order in full. Thank you. Good morning, Your Honors. Opposing counsel mentioned that the labor board came back and re-decided this case and that there was no substantive issue with it doing so. One thing to note was that both members, Kaplan and Ring, who were part of the original decision back in 2012, were still on the board as late as December of 2022. So if the board had wanted to vacate the decision and then reissue it, it could have included both of those members on a three-member panel, along with one of the other newly appointed members, and the decision would have most likely have been the same, potentially with a two-to-one dissent. But the same result would have most likely been achieved there, where the complaint would have been dismissed against the entire, the entirety of the complaint would have remained. There's a good reason for not including those two on the new panel, if your view is that maybe Emanuel exercised some influence over the original panel, and so you want a pristine panel to reconsider. Doesn't that make sense? Well, Your Honor, I respectfully disagree with that point because there's no evidence that member Emanuel somehow tainted either members Ring or Kaplan. There was no evidence in the underlying investigation report, and both member Ring participated, member Ring and member Kaplan both participated, I forget which one, participated in the August 2022 decision to vacate the order, and then there was the other Republican appointed panel member who participated in ultimately the August of 2023 order. So if the board wanted to maintain fairness here, what it should have done is it should have issued the decision promptly, and that's what was the real problem with this case. And I understand what opposing counsel is saying, is that these are somewhat minor violations in the grand scheme of things, and that the ultimate allegation against bad faith bargaining was not found permissive, and that the subcontracting was a mandatory subject of bargaining. However, all violations of the Act, the company doesn't believe it engaged in any unlawful conduct, and that's exactly what the panel decision determined in September of 2020, that the wasn't culpable for any violation of the Act. And it shows, basically taking the substantial evidence standard, if one panel found one right, and then a newly constituted panel reached another way, it doesn't seem like there was any kind of consistency. Let's say we had a jury trial, and we found out after the verdict that one of the jurors was disqualified. Are you entitled to get the same jurors plus one new one? I'm sorry, Your Honor? Are you entitled to get the same jurors plus one new one for a retrial? Your Honor, I think that a criminal trial or a civil trial of that sort is a little bit different. All right, a panel of this court, it turns out one of our judges had a conflict of interest and was disqualified. Can you demand that you get the other two judges plus a third judge, instead of a new panel? Your Honor, there is authority from the federal circuit that talks about the harmless error approach, which is if there were two members of the panel who were not conflicted. That doesn't mean you're entitled to the two that ruled in your favor plus a new one. That's just saying there's harmless error. It doesn't say you're entitled to it, does it? Where's the law that says you must reconstitute the original panel plus a new member? I think, Your Honor, that it would follow 28 U.S.C. 455, and it would be judicially created. I don't believe that the statute directly speaks to how vacatories ultimately handle, but in this particular case, both members Kaplan and Ring remained on the board and could have been participating in that reunion. Well, I remain on the court. Does that mean the parties are entitled to have me on the second panel if one of my colleagues was disqualified? Well, Your Honor, we would take the position that there shouldn't have been a vacatory to begin with, so that the original decision should have stood as is. But if you're wrong about that? Your Honor, if I'm wrong about that, I think that it would still be a preference because if there's no showing of bias on the other two members of the three-member panel, that those original two members who have familiarity with the case should be the ones to participate in that particular case, again, because of their familiarity with the case and no showing of bias. And I guess, yes, another panel member would be able to join if that's what ultimately were the decision there. So — and then it would still most likely be a two-to-one decision, and that's where the harmless error part of 28 U.S.C. 455 falls. So that's our perspective there on that particular point. With respect to the two substantive issues, very briefly, from the supervisor's standpoint, the point was to eliminate discretion, to make sure that there were — it was really a lessons learned more than anything else. With someone — to Judge Gregg's question, did someone other than the supervisor remain available to grant these discretionary leaves? Your Honor, I agree with the opposing counsel. I don't believe that issue was ever developed into the record. And, Your Honor, as I see, my time has concluded. So thank you very much.